E. G. DICKSON, Appellant, v. H. C. YOUNG et al., Appellees.

No. 39329.

NOVEMBER 13, 1928.

REHEARING DENIED APRIL 5, 1929.

*Mabry & Mabry, Roberts & Roberts,* and *T. P. Bence,* for appellant.

*Bates, Simmons & Richmond, Charles H. Elgin, Payne & Goodson, Henry C. Taylor,* and *Heinrich Taylor,* for appellees.

*Verne J. Schlegel,* for J. G. Stone and John Waybill, appellees.

STEVENS, C. J.—I. This is the third appearance of this case in this court. See *Dickson v. Young,* 199 Iowa 589; *Dickson v. Young,* 202 Iowa 378. The action was commenced by appellant  to recover damages for an alleged malicious prosecution in the United States District Court at Ottumwa, under the Espionage Act of June, 1917. The prosecution was instituted in January, 1920, by the filing of an information signed by the appellee Young. All of the parties reside in Davis County, where considerable confusion and controversy arose during the World War, involving complaints on the part of some of the defendants and others that appellant was not doing his part in the matter of contributions to the Red Cross and other war necessities and in other respects. The details of the various proceedings and transactions on the part of many citizens of Davis County for the ostensible purpose of enforcing contributions from appellant and to deter alleged disloyal utterances need not be recited.

At the time of the institution of the proceedings against appellant in the Federal court, E. G. Moon was the United States district attorney for the Southern District of Iowa. The evidence as to the filing of the information is without dispute, so

far as the facts directly testified to by the witnesses are concerned. The information was prepared in the office of the district attorney, forwarded by mail to the appellee Taylor, who presented it to Young, who was president of the Red Cross, to be signed. Moon testified that he first learned of the alleged disloyal utterances of appellant several months before the prosecution was begun; that at no time prior to the filing of the information had any of the appellees voluntarily made complaints or statements to him concerning the appellant; and that much of his information was obtained from a subscription solicitor of an Ottumwa paper, who claimed to have talked with appellant, from the United States marshal and government investigators who investigated the facts, at his request and upon his direction; that he sent for two of appellees to come to Ottumwa, to talk the matter over with him; that no one of appellees at any time or place counseled, urged, or advised the institution of the prosecution; that the information was sent to the appellee Taylor because of his connection with war activities and instrumentalities in Davis County; and that, in the preparation of the information and the filing thereof, he acted upon his own initiative, and in pursuance of what he believed to be his official duty in the premises. No direct evidence was offered to the contrary, and the testimony of the district attorney was corroborated by the testimony of the United States commissioner and the clerk of the United States district court, who, at the time in question, was marshal of the Southern District.

The testimony on behalf of the appellant tends to show that some or all of the appellees were more or less active in Davis County in the solicitation of funds and other war activities, taking part in demonstrations involving the appellant, and for the purpose of enforcing contributions from him, and for other purposes. The appellee Goodson was county attorney of Davis County, and during his term of office, an indictment was returned against appellant, which was later dismissed without prosecution. Subsequently, and after he had been informed by Moon that, in his opinion, the signing of the Armistice terminated the operation of the Espionage Act, appellant instituted an action against the defendants and others in Davis County for damages. The details of this action do not appear in the record. This action

was begun in August, and, as stated, the information was filed in the United States court the following January.

Moon testified that he later learned of the commencement of the action for damages in Davis County, and that the war was not terminated by the signing of the Armistice, and that the Espionage Act was still in force; that he communicated the facts he had learned as to the utterances and conduct of appellant to the Department of Justice at Washington, and solicited and obtained advice therefrom as to his course in the matter; and that the prosecution was in pursuance thereof. The reason given for the filing of the information, rather than the submission of the testimony to the grand jury, was that, by the course pursued, under a ruling by the presiding judge, the cause could be more quickly brought to trial. An indictment was subsequently returned, upon which appellant was tried and convicted upon one of a large number of counts stated. The conviction was later set aside by the Circuit Court of Appeals, and appellant discharged.

Goodson & Taylor were employed as attorneys by all of the defendants in the damage suit commenced by appellant in Davis County. It is the claim of appellant that each and all of the appellees are his enemies; that they instituted and aided the prosecution; that they were present at the trial in the Federal court, counseling, urging, and in other ways assisting the government in the prosecution of the suit, for the purpose of securing a conviction. The evidence shows that most, if not all, of the appellees were subpoenaed as witnesses upon the trial, but that few of them were called. Witness testified that he saw Goodson in the district attorney's office and other appellees talking to some of the witnesses at Ottumwa. Chapman was a witness for the government, and gave substantial testimony against appellant. We shall not set out in detail the evidence as to the language and conduct of appellant during the war, of which complaint was then made. One of the appellees was foreman of the grand jury that returned the indictment in Davis County against appellant, and was called as a witness in rebuttal upon the trial in the Federal court. Testimony was offered upon the trial below, tending to show that one or two of the appellees, prior to the institution of the prosecution, made statements to the effect that appellant should be sent to the penitentiary at Leavenworth. The evidence also shows that appellee Taylor was in Washington when Moon

went to confer with the Department of Justice as to the prosecution of appellant. It is claimed that this visit by Taylor was for the purpose of urging a prosecution. So far as the direct testimony was offered on this point, it was to the effect that Taylor did not visit the Department of Justice; that he went for an entirely different purpose; and that he did not discuss the prosecution with Moon or anyone else.

Aside from the matters stated, there is little or no testimony in any way, directly or indirectly, implicating any of appellees in the alleged malicious prosecution. It is true that suspicion naturally arose in the mind of appellant as to the good faith of appellees, but to what extent this suspicion may be justified we have no occasion to discuss. Suffice it to say that something more than mere suspicion, even if fully justified, is required. Taylor testified that, when he received the information from Moon, he took it to Young, who was president of the Red Cross; that they read and discussed it together; that Young asked Taylor's advice about the matter, and when informed that it appeared to be all right, signed it. There is no testimony that Young or Taylor had previously been consulted as to the commencement of the prosecution, or that they had aught to do therewith. So far as there is direct evidence on this point, as already stated, it is to the contrary.

We have by no means made an exhaustive statement of the testimony relative to the difficulties in Davis County. The foregoing is, however, in substance all of the testimony tending to connect appellees with the institution of the prosecution complained of. The essential elements which the plaintiff must prove, to maintain an action for damages for alleged malicious prosecution, are familiar, and have been too frequently stated to require repetition: but see *Miller v. Gemricher,* 191 Iowa 992; *Wilson v. Lapham,* 196 Iowa 745; *Granteer v. Thompson,* 203 Iowa 127.

The principal proposition urged by appellant for reversal is that the information was filed maliciously and without probable cause. Before discussing this proposition, we desire to dispose of the ruling as to the appellees other than Young, who signed the information, and Taylor. It seems to us that the testimony of appellant utterly failed to make out a case against any of the other appellees. The foregoing statement of the record as to

their participation in the prosecution requires no further elaboration on this point. It is manifest that a verdict against them jointly or severally, if returned, could not be sustained. In this situation of the record, the court properly directed a verdict as to them.

We have held that, if a conviction result, this is prima-facie evidence of probable cause. *Moffatt v. Fisher*, 47 Iowa 473; *Olson v. Neal*, 63 Iowa 214. Probable cause has been defined as the knowledge by the prosecuting witness of such a state of facts as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the person accused is guilty. The question of probable cause may be one of law or one of fact. If the evidence shows conclusively that the prosecution was begun with probable cause, the question is one of law, and a verdict should be directed for the defendant. As we view the record in this case, the question of probable cause is not the decisive one, but another question closely related to and allied therewith is the determinative one. It is the rule in this state, as indeed it is in most jurisdictions, that, if the defendant acts upon the advice of an attorney to whom he has, in good faith, made a full and fair disclosure of all of the facts, and particularly upon the advice of the prosecuting attorney in filing the information, the same constitutes a good defense. Ordinarily, the question as to whether such disclosures were made in good faith and the advice of an attorney obtained are questions of fact, to be submitted to the jury. If, however, the evidence is uncontradicted or conclusive on this point, the court may and should direct a verdict for the defendant. *Wilson v. Thurlow*, 156 Iowa 656; *Miller v. Gemricher*, supra; *Wilson v. Lapham*, supra; *Granteer v. Thompson*, supra.

The rule of the above cases is not, however, strictly applicable to the facts of this case. We cite the rule because of its analogy to the one presently to be announced. Strictly speaking, the appellee Young did not, in signing the information, act upon the advice of an attorney to whom he had previously, in good faith, communicated the facts known to him, So far as he acted upon the advice of an attorney directly, it was upon the advice of his codefendant, Taylor. Young, so far as the record shows, at no time contemplated the institution of a prosecution against appellant, and learned of the desire of the district attorney to

that effect when the information was presented to him by Taylor to be signed. The fact, undisputed by the testimony of any witness, is that the purpose to institute the prosecution originated in the office of the district attorney, had the approval of the department of justice, and was based upon a wholly independent investigation of the acts, conduct, and utterances of appellant by or under the direction of the district attorney.

The record contains no testimony in any way connecting Young either with the investigation instituted by the district attorney or the preparation of the information in his office at Ottumwa. Young was president of the Red Cross, and Taylor had occupied some position in connection with war activities, and had apparently been active therein. The Red Cross and other organizations in every county were important instrumentalities of the government in prosecuting the war.

Was the prosecution in this case instituted by the appellee? What and all he did was to sign the information, at the request of the district attorney. The district attorney, whose duty it was to prosecute offenses coming within his jurisdiction, after a careful and painstaking investigation, in good faith, had decided that the prosecution was justified and proper. Thus convinced, he had a perfect right to proceed in the manner adopted. Appellee was under no particular duty to grant the request of the district attorney and sign the information; but if, under the same circumstances, he had consulted the district attorney, and in good faith laid before him all of the facts, and had acted upon his advice and signed the information, he would not have been liable for damages. So far as the matter of good faith is involved, it would seem as though he should be excused from liability as well in the one case as in the other. The precise question has not previously arisen in this state; but in other jurisdictions it has been held that, in such circumstances, the prosecution is deemed to have been commenced by the prosecuting attorney. All of the instrumentalities necessary for placing the law in motion had been arranged and were under the control and direction of the public prosecutor. The reasons for the rule applicable when the prosecution has been instituted on the advice of a competent attorney are present under the facts and circumstances disclosed by this record. It seems to us that appellee should not be deemed to have instituted the prosecution. *Christy*

*v. Rice,* 152 Mich. 563 (116 N. W. 200); *Ryan v. Orient Ins. Co.,* 96 Vt. 291 (119 Atl. 423); *Western Oil Refining Co. v. Glendenning* (Ind. App.), 156 N. E. 182; *Malloy v. Chicago, M. & St. P. R. Co.,* 34 S. D. 330 (148 N. W. 598).

The court was right, therefore, in directing a verdict in his favor.

II.   The remaining question to be disposed of relates to the appellee Taylor.  His position is not shown to be different from that of Young.  He merely procured the information to be signed, at the request of the district attorney.  Both Young and Taylor knew of the alleged utterances and conduct of appellant, at the time the information was signed, and one or both testified that they believed the prosecution proper.  It seems to us, from a careful consideration of the record, which is somewhat voluminous, that a verdict for plaintiff, if the case had been submitted to, and one returned by, the jury, could not be sustained.

For the reasons indicated, the judgment of the court below is—*Affirmed.*

DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.