DANIEL DRISCOLL, Appellee, v. A. W. MEYER, Appellant.

**MALICIOUS PROSECUTION:** Malice—Conflicting Instructions. Prejudicial error results from instructing the jury both that *it may* and that the *law does* draw an inference of malice from the nonexistence of probable cause, and from inferentially telling the jury that the inference of malice which the law draws must prevail unless overthrown by direct and positive proof of good faith and freedom from malice in the institution of the prosecution.

**MALICIOUS PROSECUTION:** Evidence—Search Warrants as Evidence. In an action for malicious prosecution, technical error (at least) may result from receiving in evidence a search warrant which is not, in its recitals, in harmony with the information on which it is based.

*Appeal from Jackson District Court.*—F. D. LETTS, Judge.

FEBRUARY 14, 1922.

ACTION for damages for suing out a search warrant under which plaintiff's premises were unlawfully searched. There was a judgment upon verdict for $479, and the defendant appeals.— *Reversed and remanded.*

*E. L. Miller,* for appellant.

*F. E. Tripp* and *Wolfe, Wolfe & Claussen,* for appellee.

EVANS, J.—I. The salient facts of the case are brief. On a night in January, 1920, the defendant's chicken house was

robbed of its chickens. Following natural impulses, he began an investigation, with a view to detecting the wrongdoer and to recovering his property. His house is located upon the north side of an east and west highway. His yards and buildings lie to the west and northwest of the house. Northerly and westerly from his buildings was an area of timber. It so happened that human tracks were discovered in the snow at a point close to the chicken house, and at a point where a fence was scaled. These tracks indicated that the person making them had come southerly towards the chicken house and had retraced his steps northerly from the chicken house. These tracks were carefully followed through the timber and in a northwesterly direction, and were finally lost in the highway a short distance from the home of the plaintiff. As to the exact distance, the testimony varies from 30 yards to 20 or 30 rods. The last tracks, at the place where they were lost, were pointing toward the plaintiff's house and buildings. The plaintiff lived northwesterly from the defendant. He also lived on the north side of an east and west highway. This latter highway was the one where the tracks were lost. There were only two other families living within that general neighborhood, the region being known as the Maquoketa Bluffs, which was virtually uninhabited. It was upon these facts that the defendant filed an affidavit, stating, in substance, that his chickens "had been taken from my henhouse," and that "I suspect Daniel Driscoll, of Preston, Iowa, of having the same." A search warrant was issued, and was served by an examination of the plaintiff's outbuildings. No searching of the residence was done or proposed, nor was any incriminating evidence found. That the tracks of a human being were found, as already stated, is put beyond dispute. The plaintiff put upon the stand the witness Yaddof, who made the tracks and who testified to the circumstances. The innocence of the plaintiff of any wrongdoing is also put beyond dispute upon this record, and was freely conceded, both by the pleading and by the evidence of the defendant. Many assignments of error are argued by the appellant. Some of these we shall have no occasion to consider.

The trial court properly instructed the jury that the burden was upon the plaintiff to establish want of probable cause

for the search warrant and malice on the part of the defendant.

1. MALICIOUS PROS-
ECUTION: mal-
ice: conflicting
instructions.
This pronouncement was further elaborated by the court in Instruction No. 9, which advised the jury that, if it found want of probable cause, it was authorized therefrom to infer malice on the part of the defendant. It also advised the jury that it was not bound to draw such inference, and that the question of malice should be determined upon all the evidence of facts and circumstances appearing in evidence and bearing upon that question. If the instruction had stopped at this point, it would have been quite unassailable. The following qualification, however, was added thereto:

"The inference that malice prompted the commencement of the proceedings for the search of plaintiff's premises, which may be drawn from a preponderance of the evidence that such commencement of the proceedings was without probable cause on the part of the defendant, is only a presumption which is raised by law, and must fail if direct and positive proof is found by you, from a full and comprehensive understanding of the evidence as a whole, that the defendant acted in good faith and without malice in filing the affidavit upon which the issuance of the search warrant was based."

The foregoing qualification is assailed by appellant as prejudicial error. We think the qualification was, to say the least, an unfortunate one, and that it was clearly erroneous in its implications, if not in its direct pronouncement. It will be noted therefrom that the inference of malice which the jury is permitted to draw for want of probable cause is described as a "presumption which is raised by law." It further declares that such presumption "must fail if direct and positive proof is found by you, from a full and comprehensive understanding of the evidence as a whole, that the defendant acted in good faith and without malice." The clear implication of this part of the instruction is that the "presumption raised by law" must prevail unless there be direct and positive proof of good faith, in which event the presumption "must fail."

We cannot escape the conclusion that the effect of this qualification was to deprive the appellant wholly of the benefit of the rule, once properly stated, that the burden was upon the

plaintiff to prove malice, in the light of all the evidence in the record, including the want of probable cause. "Direct and positive proof of good faith" was not required of the defendant. It was enough if the evidence as a whole was so doubtful that it failed to satisfy the jury, by a preponderance of the evidence, that there was malice. The burden remained upon plaintiff at all times. We are compelled, therefore, to sustain this assignment of error.

II.   The plaintiff pleaded and set forth both the information signed by the defendant and the search warrant under which the search was made.   Both were admitted in the answer.

2. MALICIOUS PROSECUTION: evidence: search warrant as evidence.

Upon the trial of the case, the plaintiff offered the search warrant in evidence.   The offer was objected to by the defendant, and the objection was overruled.   Error is assigned because of such ruling.

Ordinarily, we should deem it quite immaterial and non-prejudicial, in the state of the pleadings, whether the warrant were introduced or omitted. In this case, however, there was a variance in the respective statements contained in the information and in the warrant. The information said: "I further *suspect* Daniel Driscoll of Preston of *having* the same." The search warrant said that Meyer both suspected and *believed* that the "chickens were *taken* by one Daniel Driscoll." The distinction is twofold:

(1)   That the information charged the present possession to Driscoll, and did not charge the larceny; whereas the search warrant described the information as charging the larceny to Driscoll, and not the possession.

(2)   That the information stated that Meyer *suspected* Driscoll; whereas the search warrant indicated that Meyer both *suspected* and *believed*.

The distinction is somewhat fine; but, in the light of the evidence, it is not without its significance. Driscoll is conceded to be a man of good character and reputation. Meyer had stated repeatedly to the officer serving the search warrant that he could not believe that Driscoll would take his chickens. He admitted these declarations upon the witness stand. Because of the tracks, he did suspect that whoever took them left them upon the Dris-

coll premises. His statement in the information was at least literally consistent with his former utterances. The statement ascribed to him in the search warrant was not. Insignificant as this distinction may seem, outside of the record, there is no reason discoverable from the record why the plaintiff should insist on putting this search warrant in evidence, except the possible advantage of getting before the jury the statements of the search warrant as to the contents of the information. We think that the admission of this exhibit was at least technically erroneous, and we are not prepared to say that it was not prejudicial. We would hesitate to reverse upon this ground alone; but in view of the necessity of a new trial, we deem it proper to take this notice of this assignment of error.

III. Several of the other assignments of error relate to the sufficiency of the evidence. In view of a new trial, we are not disposed to discuss that question, further than to say that we deem the evidence of want of probable cause very close, not because of any doubt as to the innocence of the plaintiff, but because the circumstance of the discovery of the tracks already described was a very significant one, and was well calculated to lead the defendant into suspicion, without bad faith. The evidence may be materially different upon the second trial. For the same reason here indicated, we are not disposed to consider complaint concerning the measure of damages.

For the reasons indicated, the judgment below must be— *Reversed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.